UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| LAMONT L. WARREN,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br><br>    Defendants. | Civil Action No. 6:19-078-KKC<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Lamont L. Warren is a federal prisoner who was previously confined at the United States Penitentiary (USP) – McCreary in Pine Knot, Kentucky and is now incarcerated at the USP in Pollock, Louisiana. Proceeding without a lawyer, Warren filed a civil rights complaint with this Court using the Court's approved E.D. Ky. 520 Form. [R. 21]. That complaint is now before the Court on initial screening pursuant to 28 U.S.C. §§ 1915 and 1915A. For the reasons set forth below, the Court will dismiss most of Warren's claims, but it will allow some of his claims under the Federal Tort Claims Act (FTCA) to proceed.

I.

In 1996, a jury in the District of Columbia Superior Court convicted Warren of "an array of crimes, including assault with intent to kill while armed, possession of a firearm during a crime of violence, carrying a pistol without a license, and voluntary manslaughter while armed." *Warren v. United States*, No. 3:11-cv-1479 at R. 12 (M.D. Penn. 2011). Warren has said that he was sentenced to an aggregate term of 22 years to life in prison. *See id.*

As best as the Court can tell from Warren's complaint, which is very difficult to follow, he participated in the Bureau of Prisons' (BOP's) Challenge Program while he was incarcerated at USP – McCreary. The Challenge Program is an intensive treatment program for high security inmates. Warren, however, alleges that he did not complete the program but instead "removed himself because of vindictiveness by" Ms. Howard, a treatment specialist who he alleges "called him a pervert to several inmates." [R. 21 at 2]. The United States Parole Commission subsequently denied Warren parole, citing his "negative institutional behavior and lack of programming." [R. 21-4 at 1]. The Parole Commission then recommended that Warren re-enroll in the Challenge Program and complete it before being further considered for parole. [*See id.*].

Warren alleges that he requested re-entry in the Challenge Program, but prison officials denied his request and retaliated against him by placing him in the Special Housing Unit (SHU). [*See* R. 21 at 2; R. 21-1 at 2; R. 21-2 at 1]. According to Warren's exhibits, prison officials claim that they placed him in the SHU "pending an investigation for continued negative institutional behavior in the form of predatory behavior towards female staff." [R. 21-4 at 2]. Warren, however, apparently alleged to the BOP that prison "staff intentionally fabricated the allegations of negative institutional behavior." [*Id.*].

Warren then claims that, while he was in the SHU, he was placed in a cell with another inmate who he says came from a "different background," had a different "belief system," and even "screamed about killing Americans." [R. 21 at 2-3; R. 21-1 at 2]. Warren says that he complained about the inmate and "wrote to Psyc," "told SIS Salmen," and "talked to [the] Unit Team," but "never got any help" and "was refuse[d] moving." [R. 21 at 2; R. 21-1 at 2]. Warren then alleges that the other inmate attacked him, stabbing him multiple times in the back. [*See* R. 21 at 2-3; R. 21-1 at 2; R. 21-4 at 2]. Warren also suggests that unspecified prison officials knew of the other

2

inmate's "history of assaults on black African inmates" and failed to protect him, especially since there was "a weapon in the cell which caused [Warren] harm." [R. 21 at 3].

Finally, Warren claims that, after the alleged assault, an unnamed physician "did not provide medicine for pain or issues of my stress of pain." [R. 21-2 at 1]. Warren also says, "Plaintiff complaint about problems with stabbing making it worst with his reflex and need to go to a outside hospital. No response." [*Id.*]. Still, Warren acknowledges that he was taken "to a prison infirmary," "operated on for an hour," and "receive[d] over 20 stitches in his left side and back." [R. 21-1 at 2]. Warren also notes that a physician's assistant later removed his stitches [R. 21-2 at 1], though he complains that he "never received a pain pill to confront the pains he suffered" and confusingly adds that he "was then forced in cell with a homosexual." [R. 21-1 at 2].

In addition to setting forth the foregoing factual allegations, Warren lists multiple defendants in his complaint, including Warden Ray Ormond, Assistant Warden Gomez, Treatment Specialist Ms. Howard, Treatment Specialist Dr. Booker, and "unknown officials." [R. 21 at 1-2]. In an attached document, Warren also lists numerous John Doe defendants, including but not limited to correctional officers, a lieutenant, a medical administrator, and an individual allegedly in charge of prisoner medical appointments. [*See* R. 21-1 at 1].

When asked what rights the defendants allegedly violated, Warren cites 42 U.S.C. § 1983, states that a supervisor is generally "liable for the constitutional violations of subordinates," claims that "mental and emotional distress are compensable," says the "filing of prison grievances is actively protected," and suggests that prison officials retaliated against him for exercising his constitutional rights. [R. 21 at 4]. Warren also later references his administrative tort claims, the Eighth Amendment's prohibition on cruel and unusual punishment, and his due process rights. [*See* R. 21 at 5-6; R. 21-2 at 1]. Warren also filed an "amended affidavit of truth," but that

3

document is largely unintelligible and includes references to slavery, the Declaration of Independence, and case law from the nineteenth century. [*See* R. 21-3 at 1-2].

Ultimately, Warren asks the Court to grant him several different forms of relief, including an order that releases him from custody, directs that he be paid $100 million, and expunges all his disciplinary convictions. [R. 21 at 8; R. 21-2 at 2]. These are just a few the forms of relief that Warren is seeking. [*See* R. 21-2 at 1-2].

Warren's complaint is now before the Court on initial screening pursuant to 28 U.S.C. §§ 1915 and 1915A.

II.

As an initial matter, Warren's complaint and attached documents are very difficult to follow and do not comply in any meaningful way with the Federal Rules of Civil Procedure. Indeed, Warren's complaint runs afoul of Rule 8 because it does not contain "a short and plain statement of the claim showing that [he] is entitled to relief" and fails to include allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Instead, Warren's submissions include numerous hard-to-follow pages that contain overlapping factual allegations and repetitive claims for relief. [*See* Rs. 21, 21-1, 21-2, 21-3, 21-4, 21-5]. Warren also wrote his allegations in a confusing narrative format that includes many superfluous details and fails to clearly explain what each named defendant did or failed to do to cause him harm, despite being specifically directed to do so. [*See id.*]. Thus, Warren's claims are hard to track. That said, since Warren is a *pro se* litigant, he is afforded latitude and, therefore, the Court has attempted to group those claims for relief that it can follow.

### A. Claim Challenging the Parole Commission's Decision

Warren first appears to be trying to directly or indirectly challenge the Parole Commission's decision denying him parole—a decision presumably based, at least in part, on his failure to complete the Challenge Program. However, Warren has already fully litigated this issue to no avail before the United States District Court for the Western District of Louisiana, *see Warren v. Johnson*, No. 1:18-cv-1431 (W.D. La. 2019), and he cites no legal authority that would allow him to collaterally attack the Western District of Louisiana's decision in this civil rights case. Thus, the Court will dismiss this claim with prejudice.

### B. Claim Challenging Disciplinary Convictions

Warren also asks the Court to "expunge all the disciplinary convictions described in this complaint." [R. 21-2 at 2]. Warren, however, has not put forth clear factual allegations regarding these convictions and, in any event, "he must challenge his disciplinary conviction[s] by way of a petition for writ of habeas corpus under 28 U.S.C. § 2241, not by way of a *Bivens* civil rights action." *Tomlinson v. Holder*, No. 7:11-cv-140, 2011 WL 5330724, at *5 (E.D. Ky. 2011). In other words, Warren has not properly asserted his claim regarding his disciplinary convictions and, therefore, the Court will dismiss that claim without prejudice.

### C. Constitutional Claims

Warren is also obviously trying to assert multiple constitutional claims against several different officials at USP – McCreary. After all, across Warren's various submissions, he cites numerous constitutional amendments, and he lists up to a dozen named and unnamed prison officials as defendants. However, as the Court previously discussed, Warren's claims are difficult to track because he includes many unnecessary details in his complaint and does not consistently tie his factual allegations to the listed defendants. Thus, the Court cannot precisely determine what

Warren is claiming each named defendant did or failed to do to cause him harm. Still, the Court has tried to group at least some of Warren's civil rights claims.

1. Due Process Claim

The Court first recognizes that Warren objects to the circumstances surrounding his initial withdrawal from the Challenge Program, presumably on due process grounds. Specifically, Warren repeatedly alleges that he removed himself from the program because of the "vindictiveness" of Ms. Howard, a treatment specialist who he alleges "called him a pervert to several inmates." [R. 21 at 2]. These allegations, however, are very vague, and, in any event, a prisoner does not have a liberty or property interest in participating in a prison rehabilitation program, as this Court has repeatedly made clear. *See, e.g., Sheppard v. Quintana*, No. 5:18-cv-630-KKC, 2019 WL 691775, at *2 (E.D. Ky. 2019) ("Nor does a prisoner have a liberty or property interest in participating in a prisoner rehabilitation program."); *Heard v. Quintana*, 184 F. Supp.3d 515, 519 (E.D. Ky. 2016) (the same). Thus, the Court will dismiss this claim with prejudice.

2. Retaliation Claim

The Court also recognizes that Warren tries to assert a retaliation claim. Indeed, Warren alleges that he requested re-entry in the Challenge Program, but prison officials denied his request and retaliated against him by placing him in the SHU. [R. 21 at 2; R. 21-1 at 2; R. 21-2 at 1]. According to Warren's exhibits, prison officials claim that they placed him in the SHU "pending an investigation for continued negative institutional behavior in the form of predatory behavior towards female staff." [R. 21-4 at 2]. Warren, however, apparently alleged to the BOP that prison "staff intentionally fabricated the allegations of negative institutional behavior." [*Id.*].

In order to state a retaliation claim, the plaintiff must allege that: (1) the plaintiff engaged in protected conduct; (2) the defendant took action against the plaintiff sufficiently adverse to deter

6

a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's adverse action was motivated at least in part by the plaintiff's protected conduct. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012).

Here, although Warren alleges some relevant facts in his complaint, he does not clearly tie his allegations to any of the named or unnamed defendants listed in the complaint. And while Warren apparently alleged to the BOP that prison "staff intentionally fabricated the allegations of negative institutional behavior" [R. 21-4 at 2], it is simply not clear to whom Warren was referring.

Warren may be suggesting that he engaged in protected conduct by requesting re-entry in the Challenge Program and that Ms. Howard took some action against him. However, Warren alleges in his complaint that Ms. Howard engaged in "vindictiveness" and "called him a pervert to several inmates" months before he ever sought re-entry into the Challenge Program. [R. 21 at 3]. Thus, logically, Warren does not appear to be alleging that Ms. Howard's actions were motivated by his attempt to re-enter the Challenge Program. Therefore, as currently pled, Warren's allegations fail to state a retaliation claim against Ms. Howard.

In short, the alleged facts surrounding Warren's retaliation claim are difficult to follow. As a result, the Court will dismiss that claim without prejudice.[1]

---

[1] Even if Warren's allegations were easier to track, it appears that his due process and retaliation claims may not be cognizable under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). That is because the Supreme Court recently made it clear that federal courts should refrain from extending *Bivens* outside of the three specific contexts in which it has already been applied, absent the presence of special factors. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017). Given the *Ziglar* decision, courts have refused to extend a damages remedy under *Bivens* to retaliation and due process claims like those Warren apparently tries to put forth in his complaint. *See, e.g., Robinson v. United States*, No. 4:18-cv-1817, 2019 WL 1255208, at *3 (N.D. Ohio 2019). Thus, even if Warren's complaint were easier to follow, it appears that his due process and retaliation claims may be unavailing, though the Court need not resolve this issue at this time.

### 3. Failure-to-Protect Claim

Warren also appears to be asserting a failure-to-protect claim. Indeed, Warren alleges that, while he was in the SHU, he complained about being placed in the cell with another inmate who he says came from a "different background," had a different "belief system," and even "screamed about killing Americans." [R. 21 at 2-3; R. 21-1 at 2]. Warren says that he "wrote to Psyc," "told SIS Salmen," and "talked to [the] Unit Team," but "never got any help" and "was refuse[d] moving." [R. 21 at 2; R. 21-1 at 2]. Warren then alleges that the other inmate attacked him, stabbing him multiple times in the back. [*See* R. 21 at 2-3; R. 21-1 at 2; R. 21-4 at 2]. Warren also suggests that unspecified prison officials knew of the other inmate's "history of assaults on black African inmates" and failed to protect him, especially since there was "a weapon in the cell which caused [Warren] harm." [R. 21 at 3].

As this Court has explained, in order to state a failure-to-protect civil rights claim, an inmate must allege that a prison official was aware of a substantial risk that the plaintiff would suffer serious harm and knowingly disregarded that risk. *Johnson v. Slone*, No. 7:16-cv-274-KKC, 2018 WL 1402376, at *3 (E.D. Ky. 2018). While Warren has alleged some relevant facts in his complaint, he once again does not clearly tie his allegations to any of the named defendants or even one of the John Doe defendants listed in the complaint. Thus, as currently pled, Warren's failure-to-protect civil rights claim does not get off the ground.

To be sure, Warren does say that he "wrote to Psyc," "told SIS Salmen," and "talked to [the] Unit Team," but "never got any help" and "was refuse[d] moving." [R. 21 at 2; R. 21-1 at 2]. However, Warren does not name "SIS Salmen" as a defendant, and he does not clearly link these specific factual allegations to any of the named or unnamed defendants that he does list in

his complaint.[2] Warren also does not say who knew of the other inmate's alleged history of assaulting black inmates, and he does not allege who, if anyone, knew that there was a weapon in the cell. It is not clear if Warren is lodging these allegations against the Warden, the Assistant Warden, one of the Treatment Specialists, one of the specific John Doe defendants listed in the complaint, or another individual. In fact, Warren often phrases his allegations in the passive voice or merely refers to "they" or "officials" generally, instead of asserting factual allegations specifically against the named or unnamed defendants. In short, Warren has not put forth enough clear allegations to state a failure-to-protect claim. Thus, the Court will dismiss this claim without prejudice.

4. Deliberate Indifference Claim

Warren may also be trying to assert a claim that prison officials displayed deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. After all, Warren claims that, after the alleged assault, an unnamed physician "did not provide medicine for pain or issues of my stress of pain." [R. 21-2 at 1]. Warren also says, "Plaintiff complaint about problems with stabbing making it worst with his reflex and need to go to a outside hospital. No response." [*Id.*] Finally, Warren adds that he "never received a pain pill to confront the pains he suffered." [R. 21-1 at 2].

In order to state an Eighth Amendment deliberate indifference claim, Warren must allege two components: one objective and one subjective. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). To satisfy the objective component, the plaintiff must allege a sufficiently serious

---

[2] In Warren's long list of various John Doe defendants, which is in an entirely separate section of his complaint, he does refer to a "lieutenant in charge of the administrative segregation unit," as well as one psychologist. [R. 21-1 at 1]. But Warren does not allege in any clear way that he specifically communicated about the hostile inmate with either of these John Doe defendants.

medical need. *Id.* To satisfy the subjective component, the plaintiff must allege facts which "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, even if the Court assumes that Warren has adequately alleged a sufficiently serious medical need, he once more does not clearly tie his allegations to any of the named or unnamed defendants listed in his complaint. Warren does allege that a physician did not provide him pain medicine, but he does not actually list a physician as a named or John Doe defendant. And while Warren lists a medical administrator and an individual allegedly in charge of prisoner medical appointments as defendants, he does not clearly link his factual allegations to any conduct on the part of either of these defendants, let alone conduct that would amount to cruel and unusual punishment. In short, Warren's vague factual allegations fail to state an Eighth Amendment deliberate indifference claim. Therefore, the Court will dismiss that claim without prejudice.

## D. FTCA Claims

Warren also appears to be trying to seek relief against the United States pursuant to the FTCA. Although Warren does not clearly list the United States as a defendant in his complaint [*see* R. 21], he repeatedly references his "tort claims" [*see id.* at 5-6] and then attaches his correspondence with the BOP regarding those claims. [R. 21-4 at 1-2]. Thus, Warren is clearly trying to pursue FTCA claims and, as a result, the Court will direct the Clerk's Office to add the United States as a party to this action.

While the precise nature of Warren's FTCA claims is unclear, it appears from an exhaustion document attached to his complaint that he previously put forth three "administrative tort claims," which the BOP then "considered for administrative settlement under the . . . FTCA."

[R. 21-4 at 1]. First, Warren alleged that he was deliberately denied parole. [*Id.*]. Second, Warren alleged that prison staff became retaliatory in nature and penalized him by placing him in the SHU. [*Id.*]. Third, Warren claimed that, as a result of being placed in the SHU, he was assaulted. [*Id.*]. The Court will assume that Warren is still trying to pursue all three FTCA claims, as well as a fourth claim based on allegations that, after he was assaulted in the SHU, prison officials provided him with legally inadequate medical care.

Warren's first FTCA claim is not cognizable. As the Court previously discussed, Warren has fully litigated his claim that the Parole Commission improperly denied him parole, and he cites no legal authority that would allow him to challenge the Parole Commission's decision via a FTCA claim. Thus, the Court will deny that claim with prejudice.

The Court, however, will allow Warren to proceed on his second and third FTCA claims. Those FTCA claims appear to be based on essentially the same allegations that served as the basis for Warren's retaliation and failure-to-protect civil rights claims previously discussed. Indeed, Warren's second FTCA claim appears to be premised on allegations that he requested re-entry in the Challenge Program and, in response, prison "staff intentionally fabricated . . . allegations of negative institutional behavior against [him]" and placed him in the SHU. [R. 21-4 at 2]. Warren's third FTCA claim appears to be based on allegations that prison staff negligently failed to protect him by placing him in the SHU with another inmate who allegedly had a history of assaulting black inmates and access to a weapon and who allegedly stabbed Warren multiple times in the back, causing him physical injuries. [R. 21 at 3; R. 21-4 at 2]. While Warren's retaliation and failure-to-protect civil rights claims are unavailing for the reasons set forth above, the Court will allow his corresponding FTCA claims to go forward past the initial screening stage.

The Court will also allow Warren to proceed on a FTCA claim based on essentially the same allegations that served as the basis for his Eighth Amendment claim that prison officials were deliberately indifferent to his serious medical needs. To be sure, it is not clear that Warren ever actually exhausted such a FTCA claim. However, the BOP did discuss the medical care that Warren received after being injured in the SHU [R. 21-4 at 2], and, in Warren's submissions, he repeatedly mentions his tort claims and alleges that he was denied medical care by certain prison officials. [R. 21-1 at 2; R. 21-2 at 1]. Thus, while the Court is dismissing Warren's Eighth Amendment deliberate indifference claim without prejudice, it will allow a corresponding FTCA claim to proceed.

### E. Other Miscellaneous Claims

Finally, the Court recognizes that Warren cites several other constitutional provisions in his submissions, including but not limited to the Ninth, Tenth, and Fourteenth Amendments. [*See* R. 21-3]. Warren also references state law tort claims in passing and says the Court should exercise supplemental jurisdiction over those claims. [*See* R. 21-1 at 1; R. 21-2 at 1]. Warren, however, has neither clearly explained the nature of these claims nor identified precisely which allegations are tied to which claims. Thus, the Court will deny these other miscellaneous claims without prejudice.

### III.

In light of the foregoing analysis, it is **ORDERED** as follows:

1. The following claims are **DISMISSED WITH PREJUDICE**: Warren's claim challenging the Parole Commission's decision; his due process civil rights claim; and his first FTCA claim (which also argues that the Parole Commission improperly denied him parole).

2. The following claims are **DISMISSED WITHOUT PREJUDICE**: Warren's claim challenging his disciplinary convictions; his retaliation, failure-to-protect, and deliberate indifference civil rights claims; and Warren's miscellaneous claims described above.

3. The Clerk's Office shall **ADD** the United States of America as defendant, but it shall also **TERMINATE** all the other defendants in this case.

4. Warren may proceed on his three remaining FTCA claims against the United States of America, in accordance with this Opinion.

5. The Deputy Clerk shall **PREPARE** two "Service Packets" for service upon the United States of America. Those Service Packets shall include:

    a. a completed summons form;

    b. Warren's complaint [R. 21];

    c. this Memorandum Opinion and Order; and

    d. a completed USM Form 285.

6. The Deputy Clerk shall **SEND** the Service Packets to the USMS in Lexington, Kentucky, and note the date of delivery in the docket.

7. The USMS shall **SERVE** the United States of America by sending Service Packets by certified or registered mail to both the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky and the Office of the Attorney General of the United States in Washington, D.C.

8. Finally, Warren must immediately advise the Clerk's Office of any change in his current mailing address. If Warren fails to do so, the Court will dismiss his case.

Dated August 8, 2019

*Karen K. Caldwell*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY