# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
## LONDON

**Lamont L. Warren,**

    Plaintiff,

v.

**United States of America,**

    Defendant.

Civil No. 6:19-78-KKC-EBA

# OPINION AND ORDER

**\*\* \*\* \*\* \*\* \*\***

This matter is before the Court on Plaintiff Lamont L. Warren's Motion for New Trial for Appeal [DE 116] and Motion for Appeal from a Judgment or Order of a District Court [DE 119]. The United States has filed a response to Warren's first motion and the time for filing of responses and replies has passed. The motions are therefore ripe for review, and for the reasons stated in this opinion, both will be denied.

## BACKGROUND

Plaintiff Lamont L. Warren is a federal prisoner who was previously confined at USP McCreary. [DE 21 at 2.] Warren, proceeding without a lawyer, filed a complaint arising out of incidents occurring while he was incarcerated at USP McCreary. [*Id.* at 2, 4.] He alleges that prison officials retaliated against him by denying his request to participate in the Bureau of Prisons' Challenge Program and placing him in the Special Housing Unit where he was attacked by his cellmate. [*Id.* at 2–4.] He also claims that the

alleged injuries that he suffered from that attack were not adequately treated. [DE 21-2 at 2.]

After initial screening under 28 U.S.C. §§ 1915 and 1915A, the Court dismissed all of Warren's claims, except for certain FTCA claims against the United States, the sole remaining defendant. [DE 27 at 3.] Thereafter, the United States filed a motion to dismiss [DE 37], which this Court ultimately denied. [DE 49.] Following that denial, discovery commenced and closed, and neither party submitted any additional dispositive motions. [DE 92.] Accordingly, on March 29, 2021, the Court directed parties to file status reports identifying the witnesses and evidence that they intended to present at trial. [DE 99.]

Warren filed a status report that identified witnesses, but the report did not describe their expected testimony. [DE 101-20.] Of those identified witnesses, Warren only provided the name for one witness: "Dr. Booker." [*Id.*] He generically described the other witnesses as "Nurse(s) John Doe, Jane." [*Id.*] Shortly after, Warren subsequently filed various motions and notices, including a motion for a writ of habeas corpus ad testificandum to present certain inmates from USP Hazelton as witnesses to testify before the Court [DE 104] and a notice advising the Court that he may present two additional witnesses that he did not identify in his initial status report [DE 105]. On April 22, 2021, the Court denied Warren's motions but advised Plaintiff that he could present witnesses via video or affidavit. [DE 107 at 2.]

In its April 22, 2021 Order, the Court directed Warren to file a list of intended witnesses with each witness's name, address, phone number, and expected testimony within fourteen days. [*Id.*] Warren did not file the list by

– 2 –

the deadline. While his other motions were pending, Warren filed a "tendered amended complaint." [DE 106.] On April 29, 2021, the Magistrate Judge entered a Recommended Disposition, construing Warren's pleading as a motion to amend his complaint and recommending that the Court deny the motion. [DE 109.] On June 24, 2021, the Court adopted the Recommended Disposition and denied Warren's motion. [DE 111.] At that time, Warren still had not filed a list of intended witnesses in compliance with the Court's April 22, 2021 Order.

On July 21, 2021, the Court ordered Warren to show cause "as to why his case should not be dismissed because of his repeated failure to follow court directives," specifically his failure to file the witness list. [DE 112 at 2.] Warren filed a timely response to the Show Cause Order [DE 113] but did not file any list that conforms with the requirements of the Court's April 22, 2021 Order.

On August 25, 2021, after considering Warren's response, the Court dismissed this action without prejudice for repeated failure to comply with the Court's orders. [DE 114.] Warren subsequently simultaneously filed a notice of appeal [DE 115] and the instant motion for a new trial [DE 116]. The Sixth Circuit then issued a letter stating Warren's case would be held in abeyance pending disposition of his motion for a new trial. [DE 118.] Warren then filed a Motion for Appeal from a Judgment or Order of a District Court [DE 119]. And on October 4, 2021, the United States filed a response to Warren's Motion for a New Trial for Appeal [DE 120] and Warren has not filed a reply.

– 3 –

## ANALYSIS

As an initial matter, it is necessary to determine what relief Warren seeks in his motions. Warren's first motion is titled "Motion for New Trial for Appeal," and in the motion he asks for several things: that "this case should be accepted and moved forward" [DE 116 at 2]; for the Court "to move forward in this action" [DE 116 at 3]; and for the Court "to direct a verdict in [sic] [Warren's] behalf." [DE 116 at 4.] Though his arguments are at times difficult to follow, and the procedural mechanism he is attempting to employ is unclear, the gist of Warren's request for relief in this motion seems to be that his case should not be dismissed, and further that the Court should enter judgment as a matter of law in his favor.

Warren's second motion argues that he was unable to provide information about the testimony of his intended witnesses because he has "no knowledge what the witnesses would state on the record or testify to[]."[1] [DE 119 at 1.] He appears to argue he was unable to contact inmates in other prisons (who presumably might serve as witnesses) because prison officials would not allow him to do so. Warren also states that "due to COVID-19 it would be impossible for [him] to carry out any contact unless in touch with the Court and US Attorney which only in writing I could get in touch with in mailing a letter which when I had no response [sic]." [DE 119 at 1.] Warren

---

[1] Warren's second motion [DE 119] appears to be directed to the Sixth Circuit as part of his appeal. *See Warren v. United States*, No. 21-5886 (6th Cir. filed Sept. 16, 2021). The motion was mailed to the clerk of the Eastern District of Kentucky and is captioned as a case in this district, but the caption references the case number of Warren's appeal, the motion is titled "Motion for Appeal from a Judgment or Order of a District Court," the substance of Warren's arguments are framed in a way that suggests the motion is appealing the dismissal of his case, and the motion is formatted in a way that more closely resembles an appeal than district court filing. However, since Warren mailed the motion to the clerk in this district and captioned it accordingly, the Court will construe it as a request for relief from this Court.

does not state what relief he seeks, but construed liberally, he appears to be asking the Court to reconsider its order dismissing his case.

Though he does not cite any Federal Rule of Civil Procedure, the arguments and statements in Warren's motions suggest that he seeks relief that could be provided under either Rule 59(e) or Rule 60(b).[2] Thus, the Court will construe Warren's motions liberally, and in his favor, as either a Rule 59(e) motion to alter the August 25, 2021 ruling or a Rule 60(b) request for relief from that ruling. *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) ("A document filed *pro se* is to be liberally construed."); *Lloyd v. City of Streetsboro*, No. 5:18 CV 73, 2018 WL 2985098, at *1 (N.D. Ohio June 14, 2018) (citing *Smith v. Hudson*, 600 F.2d 60, 62–63 (6th Cir. 1979) and *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992)) ("[A] *pro se* motion to reconsider may be properly evaluated under either Rule 59(e) as a motion to amend judgment or under Rule 60(b) as a motion for relief from judgment.").

## I.   Rule 59(e)

A court may grant a motion pursuant to Rule 59(e) and amend or alter a judgment (1) to correct a clear error of law; (2) to address newly discovered evidence; (3) to address an intervening change in controlling law; or (4) to

---

[2] Though the title of Warren's first motion [DE 116] suggests he might seek relief under Rule 50 or Rule 59(a), his motions face insurmountable procedural hurdles under either rule because this matter was dismissed before it reached a trial. A motion under Rule 50 for judgment as a matter of law occurs during a jury trial when the nonmoving party has "been fully heard." FED. R. CIV. P. 50(a). Similarly, a Rule 59(a) motion can only be made after a trial has concluded and a judgment has been entered. FED. R. CIV. P. 59. Because this matter did not reach a trial, this Court cannot enter judgment as a matter of law under Rule 50(a) or grant a new trial under Rule 59(a). Rule 59(e) and Rule 60(b) present a more plausible procedural path for Warren's motions, and the Court therefore construes his motions under Rule 59(e) and 60(b). However, to the extent Warren does seek relief under either Rule 50 or Rule 59(a), his motions are denied.

prevent manifest injustice. *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "Generally, relief under Rule 59(e) is an 'extraordinary remedy' restricted to those circumstances in which the moving party has set forth facts or law of a strongly convincing nature that indicate that the court's prior ruling should be reversed." *Hale v. Tennessee*, No. 3:14-cv-02194, 2021 U.S. Dist. LEXIS 236796, at *5–6 (M.D. Tenn. Dec. 10, 2021).

Here, Warren's arguments cannot be construed to argue a clear error of law, present newly discovered evidence, or address an intervening change in law. Therefore, the Court may only grant Warren relief under Rule 59(e) if doing so would prevent manifest injustice.

The Sixth Circuit has made clear that the standard for manifest injustice is "an exacting standard" and that a successful Rule 59(e) motion must "clearly establish a manifest error of law." *Heithcock v. Tenn. Dep't of Children's Servs.*, No. 3:14-CV-2377, 2015 U.S. Dist. LEXIS 139751, at *3 (M.D. Tenn. Oct. 14, 2015) (citing *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007)); *Westerfield v. United States*, 366 F. App'x 614, 620 (6th Cir. 2010) ("The manifest injustice standard presents [movants under Rule 59(e)] with a high hurdle."). But courts in this circuit have been unable to arrive at a clear definition of what exactly constitutes manifest injustice. *See Hernandez v. City of Saginaw*, No. 12-cv-11916, 2013 U.S. Dist. LEXIS 113123, 2013 WL 4052632, at *3 (E.D. Mich. Aug. 12, 2013) ("The 'manifest injustice' ground is, it must be acknowledged, 'an amorphous concept with no hard line definition.'"); *United States v. Jarnigan*, No. 3:08-CR-7, 2008 U.S. Dist. LEXIS 60395, 2008 WL 2944902, at *2 (E.D. Tenn. June 19, 2008) ("As applied to Rule 59(e), no general definition

of manifest injustice has ever been developed; courts instead are directed to look at the matter on a case-by-case basis."). "What is clear from the case law, and from a natural reading of the term itself, is that a showing of manifest injustice requires that there exist a *fundamental flaw* in the court's decision that without correction would lead to a result that is *both inequitable and not in line with applicable policy*." *Jarnigan*, 2008 WL 2944902 at *2.

Here, no manifest injustice will result from the dismissal of Warren's case. Warren received multiple, clear directives to file a witness list that included the anticipated testimony of each witness. In its Show Cause Order [DE 112], the Court made it clear that Warren's case could be dismissed for his repeated failures to follow court directives. And despite those explicit, unambiguous warnings, Warren did not file a witness list that complied with the Court's orders. Dismissal of his case is not inequitable. Warren had ample opportunity to file a witness list and had notice of the consequences for failing to do so. The dismissal of Warren's case is entirely the result of his own inaction.

Moreover, dismissal under Rule 41(b) is in line with rule's applicable policy of "prevent[ing] undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962). Warren's repeated failure to comply with the Court's orders prevented his case from moving forward, and as the Court noted previously, his "persistent failure to comply with the Court's orders suggest that he does not intend to comply at all." [DE 114 at 4.] Dismissal therefore advanced the policy considerations of Rule 41(b) by preventing Warren's case from contributing to congestion of the Court's

calendar after he had caused significant, undue delay and prevented the case from moving to trial.

Warren's arguments come nowhere close to clearing the "high hurdle" necessary to show manifest injustice. *Westerfield*, 366 F. App'x at 620. In his second motion [DE 119], Warren appears to argue that he was unable to contact prisoners held in other facilities (who presumably were potential witnesses), except through filings with the Court or contact with the United States Attorney's office, and that he received no responses. However, even if this were true (and the record suggests it is not), Warren's inability to contact certain potential witness does not show a "fundamental flaw" in the Court's decision or that dismissal would be inequitable. Warren was not directed to contact potential witnesses, but merely to provide their names and a description as to what they would testify about. His inability to contact prisoners in other facilities has no bearing on his ability to comply with the Court's orders.

Warren also argues that his case should not have been dismissed because he provided the names of witnesses to the United States during his pre-trial deposition. [DE 116 at 1.] A review of Warren's deposition transcript [DE 121-1] shows that Warren did not identify the witnesses he planned to call at trial, and that he merely discussed the names of various individuals he has mentioned throughout the case. But even if Warren had identified potential trial witnesses during his deposition, he still would not have complied with the Court's orders. Warren was given clear, explicit instructions to file a witness list with the names, addresses, and expected testimony of each witness. Simply telling the United States during a

deposition who he might call to testify at trial is not the equivalent of filing those names with their expected testimony, which was necessary to move the case forward.

Warren has failed to show that dismissal of his case should be reversed. He has identified no flaw or error of law in the Court's ruling, and he has not shown dismissal to be inequitable or against any applicable policy. Therefore, to the extent he seeks relief under Rule 59(e), Warren's motions will be denied.

## II.     **Rule 60(b) Standard**

Under Rule 60(b), a party can ask a court for relief from a final order when the party shows:

    (1)   mistake, inadvertence, surprise, or excusable neglect;

    (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    (3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

    (4)   the judgment is void;

    (5)   the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

    (6)   any other reason that justifies relief.

FED. R. CIV. P. 60(b). Here, Warren's arguments seem to fit under Rule 60(b)(1). To be entitled to relief under Rule 60(b)(1), Warren must demonstrate mistake, inadvertence, surprise, or excusable neglect. Courts consider three factors when determining whether relief should be granted under Rule 60(b)(1):

    (1)   the moving party's culpability (whether the neglect was excusable)

    (2)   any prejudice to the opposing party; and

> (3) whether the moving party holds a meritorious underlying claim or defense.

*Yeschick v. Mineta*, 675 F.3d 622, 628 (6th Cir. 2012). "A party seeking relief must first demonstrate a lack of culpability before the court examines the remaining two factors." *Id.* at 628–29 (quoting *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457–58 (6th Cir. 2011)). In determining culpability, that is, whether neglect is excusable, courts consider several factors: "[1] the danger of prejudice to [the non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* at 629 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993)).

Warren's neglect in failing to follow court orders is not excusable. Though the first and fourth factors weigh somewhat in Warren's favor, as there is little danger of prejudice to the United States if Warren is granted relief and no evidence that he acted in bad faith, the second and third factors weigh strongly against him. Warren was first directed to file a witness list that included a summary of each witness's expected testimony on April 22, 2021,[3] [DE 107], and he is yet to do so—a delay of some eleven months to date. His failure to file a witness list brought the case to a halt and prevented it

---

[3] The Court first ordered the parties to file a witness list on March 29, 2021. [DE 99.] However, that order only directed the parties to "identify the witnesses and evidence" they intended to present at trial, and did not specifically direct the parties to include each witness's contact information and a summary of their expected testimony. Because Warren is a *pro se* litigant and the March 29, 2021 Order did not specifically require a summary of each witness's testimony, for this analysis the Court will consider its April 22, 2021 Order to be the first time Warren was directed to file a witness list that included a summary of each witness's expected testimony.

from moving forward in any meaningful way for nearly a year. Further, complying with the Court's orders was entirely within Warren's control since he—and he alone—has personal knowledge of the witnesses that can provide evidence to support the claims he chose to bring before this Court.

The arguments set forth in Warren's motions fail to show that his neglect was excusable. His argument that he "was not able to state what witness[es] would comment about" or that he has "no knowledge [as to] what the witness[es] would state on [the] record" [DE 119 at 1] does not justify his failure to comply with the Court's orders. Warren was not required to know exactly what any witness would say, he was simply directed to describe the relevance of their anticipated testimony to his claims.

Likewise, Warren's argument that he had already identified witnesses in his status report and during his deposition does not show that his neglect was excusable. In its Show Cause Order, the Court stated that "Plaintiff's status report only identified witnesses but did not describe their expected testimony." [DE 112 at 1.] Thus, Warren was specifically told that the witness list he had filed was deficient, and how to rectify that deficiency. He did not do so. Though Warren is to be afforded some leniency, "[e]ven a *pro se* litigant is required to follow basic procedural rules and to comply with court-imposed deadlines." *Hudson v. City of Allen Park*, No. 21-11732, 2021 U.S. Dist. LEXIS 243769, at *23 (E.D. Mich. Dec. 21, 2021) (citing *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991)). The Court's orders clearly explained what was required of Warren, and if he mistakenly thought he had complied with the Court's orders, that mistake is not grounds for relief here. When "a *pro se* litigant fails to comply with an easily understood court-imposed deadline,

there is no basis for treating that party more generously than a represented litigant." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Warren's neglect in failing to follow court orders was not excusable. He has thus failed to show he is entitled to relief under Rule 60(b)(1), and thus, to the extent that he seeks such relief, his motions will be denied.

## CONCLUSION

As explained in the Court's August 25, 2021 Opinion and Order [DE 114], dismissal of Warren's case was proper pursuant to Rule 41(b). Warren's motions [DE 116; DE 119] have provided no evidence to the contrary, and he has offered no argument that would justify setting the dismissal aside.

Accordingly, for the reasons stated in this opinion, it is hereby **ORDERED** that Plaintiff Lamont L. Warren's Motion for New Trial for Appeal [DE 116] and Motion for Appeal from a Judgment or Order of a District Court [DE 119] are **DENIED**.

This 7th day of April, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

– 12 –